Brad A. Denton, #016454
Brad@gundersondenton.com
GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS & COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 201
MESA, ARIZONA 85213
TELEPHONE: (480) 655-7440
FACSIMILE: (480) 655-7099
*Attorneys for Tresóna*



**COPY**

AUG 1 2 2014

MICHAEL K. JEANES CLEH
S PONICK
DEPUTY CLER

**SUPERIOR COURT OF MARICOPA COUNTY**
**STATE OF ARIZONA**

CV2014-095345

TRESÓNA MULTIMEDIA, LLC, an Arizona limited liability company,

Tresóna,

v.

DAVID LEGG and JANE DOE LEGG, husband and wife, and CUSTOM ARRANGEMENTS LLC, a foreign limited liability company, and ANITA CRACAUER and DAVID DALE CRACAUER, husband and wife, and JOHN and JANE DOES I-X and XYZ ENTITIES I-V

Defendants.

Case No.: _____

**COMPLAINT**

(Assigned to the Honorable
_____ )

For its Complaint, Tresóna Tresóna Multimedia, LLC ("Tresóna") hereby alleges as follows:

## FACTUAL BACKGROUND

1.    Tresóna is an established music copyright licensing company registered in the state of Arizona.

2.    Tresóna also operates an on-line digital, stock sheet music retail website.

3.    David Legg and Jane Doe Legg are a married couple residing in San Diego, California.

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 201
MESA, AZ 85213

1

4. Anita Cracauer and David Dale Cracauer are a married couple residing in Inver Grove Heights, Minnesota.

5. Custom Arrangements LLC is a foreign limited liability company registered in Inver Grove Heights, Minnesota and sells stock music composition arrangements.

6. Defendant Anita Cracauer registered "Custom Arrangements" as a personal DBA on 29 May 2003 and continues to operate as such. Defendant Custom Arrangements LLC was registered by Defendant Anita Cracauer in 5 June 2012 and continues to operate as such. Defendant Custom Arrangements LLC is wholly owned by Defendant Anita Cracauer. The affairs of Anita Cracauer and Custom Arrangements LLC are intermingled, and they do not distinguish between themselves in their dealings.

7. All of the named defendants herein, whether identified or designated as John Doe or Jane Doe, are intended to represent individuals acting either in their individual capacities, or as agents, representatives, directors, shareholders, or employees duly authorized and acting within their employment with regards to the transactions hereinafter alleged.

8. All acts herein alleged to have been done by the individually named companies, corporations, partnerships and other business entities named herein were done by their duly authorized agents, directors, shareholders or employees acting within the scope of their employment or agency, and all acts herein alleged were agreed to and ratified by the individually named companies, corporations, partnerships and other business entities alleged herein. Each of the individually named companies, corporations, partnerships and other business entities alleged herein, whether identified or not, were in fact doing business in Arizona and caused events to occur and entered into contracts and agreements in the state of

2

Arizona with Tresóna.

9.      In the event that the individually named companies, corporations, partnerships and other business entities alleged herein were not duly authorized and legally constituted business entities, all actions taken on behalf of said organizations were done for and on behalf of the principals of said organizations, which principals are identified herein or designated as John and Jane Does I-X and which corporations or companies, if unknown at this time, are designated as Entities I-V. Leave is requested of the Court to add individually named companies, corporations, partnerships and other business entities and additional named Defendants as they are learned.

10.     The acts, omissions, representations, understandings, agreements, and contracts hereinafter alleged were either done by, agreed to or ratified by Defendants herein, whether named or unnamed, and Defendants benefited either directly or indirectly from the acts, omissions, representations, understandings, agreements and contracts hereinafter alleged.  As a result of the benefit derived and the agreement to or ratification of the acts, omissions, representations, understandings, agreements and contracts, Defendants are jointly and severally liable to Tresóna for the acts, omissions, representations, understandings, agreements, and contracts alleged herein.

11.     Jurisdiction and venue are appropriate in this Court.

### *Breach of Contract*

12.     Tresóna conducts its business using its online website through which applicants may obtain custom arrangement licenses and produce custom arrangements for individual clients only.

13. Defendant David Legg ("Legg") is a custom music arranger. As early as 1 May 2013, Legg has used Tresóna's company to obtain custom arrangement licenses.

14. On 22 June 2013, Legg applied for a custom arrangement license for the song "Black Sheep." On 24 June 2013, Legg signed Tresóna's Work for Hire Agreement ("Agreement"); *see attached* Exhibit A.

15. Paragraph 3 of the Agreement specifically states that the custom music arranger (Legg) does not have permission to sell, resell, reproduce, disseminate, lease, rent and/or use the arrangement for which a custom arrangement license has been obtained in any manner whatsoever beyond the scope of the grant of the rights in the Agreement.

16. The Agreement gives Legg only the right to arrange the music once for Legg's client, as identified in the preamble of the Agreement. The Agreement grants no other rights related to the custom arrangement or music.

17. Legg breached this Agreement by allowing Defendants Custom Arrangements LLC and Anita Cracauer to use and sell the custom arrangement produced under the custom arrangement license and Agreement as a "stock arrangement" on Defendants Custom Arrangements LLC and Anita Cracauer's website (*see attached* Exhibits B and C).

### *Interference that Led Legg to Breach His Contract*

18. While engaging in the unauthorized selling and distribution of custom arrangements as stock arrangements, and also at other times, the actions of Custom Arrangements LLC and Anita Cracauer (collectively "CA") encouraged Legg to breach his contract with Tresóna.

19. Acting on these encouragements, Legg did breach that contract.

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 201
MESA, AZ 85213

4

20. CA uses two forms of inducement.

21. First, CA has an "open call" on its business website which states that CA is able to publish any custom arrangement that is submitted to it in the form of a stock arrangement (*see attached* Exhibit D). This is untrue.

22. Second, CA contacts custom arrangers personally, informing them it can sell the custom arrangements licensed by Tresóna as stock arrangements and that CA will pay to the arranger a royalty equal to fifty percent (50%) of the selling price. This is also untrue.

23. CA obtains licenses from music publishers to sell stock arrangements in print form, when in fact it sells its stock arrangements in digital form. By telling the publishers that CA is a physical printing and distribution company, when in fact it is a digital distribution retailer, CA is able to obtain contracts with publishers that require CA to pay only15% of the selling price as a royalty to the publisher (the industry standard for print arrangements).

24. Using this industry standard for royalties, Hal Leonard Music Publishing did entered a sub-licensing agreement with CA granting CA the right to create a print stock arrangement (tangible form) for "Black Sheep." For each print stock arrangement of "Black Sheep" sold, CA is required to pay Hal Leonard Music Publishing 15% of the selling price.

25. This agreement does not allow CA to obtain custom arrangements licensed by Tresóna and sell them on CA's website as stock arrangements.

26. Despite this, CA obtained Legg's custom arrangement "Black Sheep" licensed by Tresóna and is selling it as a digital stock arrangement through its website.

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 201
MESA, AZ 85213

5

27.     Tresóna has the lawful right to sell certain custom arrangements it has licensed as stock arrangements on its own website.

28.     The arrangement of "Black Sheep" by Legg is one such custom arrangement that Tresóna has the right to sell as a stock arrangement.

29.     Because Tresóna operates a digital delivery retail store for stock music arrangements, Tresóna is required to pay publishers the industry standard royalty rate of fifty percent (50%) of the selling price, not the fifteen percent (15%) it would pay if it were a print stock arrangement company.

30.     By misleading the publishers, CA pays only a fifteen percent (15%) royalty on the purchase price of "Black Sheep," retains 35% of the purchase price for itself, and gives fifty percent (50%) of the purchase price back to the custom arranger (Legg). This enriches CA and Legg and damages Tresóna and the publisher.

31.     CA told Legg that it had permission to resell the custom arrangement "Black Sheep" licensed by Tresóna.

32.     Through its actions, CA advised Legg to breach the Agreement between Legg and Tresóna.

33.     CA's representations were incorrect and induced Legg to breach his contract with Tresóna. Legg did so by giving an electronic copy of the custom arrangement to CA, enabling CA to publish and sell it using its online website and returning a "royalty" to Legg for each sale made. This was in direct contravention of the Agreement.

6

***False Advertising***

34.     Once CA unlawfully obtains a custom arrangement, CA sells the custom arrangement through its website as a stock arragement.

35.     CA advertises its ability on its website to grant exclusive rights to consumers to use the specific stock arrangment in a particular area for a certain amount of time. CA refers to this as a "buyout" (*see* Exhibit D).

36.     These consumers are "show choirs."

37.     Show choirs participate in competitions against each other for awards and ranking positions. The ability for a show choir to obtain "exclusive permission" to use a specific stock arrangement of a music composition gives a clear advantage to the show choir during competitions, especially if that particular arrangement is in high demand.

38.     CA openly encourages show choirs to purchase the "buyout" for the stock arrangement as the "only way to be sure another group will not compete with [the show choir's] chosen piece."

39.     In order to create and use a custom arrangement, a show choir must first obtain a custom arrangement license.

40.     Show choirs must obtain licensing from licensors, like Tresóna. Such a license allows the particular show choir, who has applied for the license, to arrange or have arranged a copyrighted music composition.   The resulting custom arrangement ("Arrangement A") can only be used by the show choir ("Choir X") to whom it was licensed.

7

41.     CA sells Arrangement A to other show choirs ("Choirs Y") through its website, knowing that it obtained Arrangement A unlawfully and that Choir X holds the exclusive right to arrange, and is solely authorized to use, Arrangement A.

42.     By advertising and selling a "buyout" option to Choirs Y for Arrangement A, CA is making a false representation of fact.

43.     Show choirs are incentivised to use CA's services over its competitors' because of this advertising.

44.     Such show choirs are unaware that Choir X holds the legal right to use Arrangement A.

45.     CA gains an unfair advantage over Tresóna and increases its profit by these illicit business practices.

### Defendant Anita Cracauer is Personally Liable for Legg's Breach of Contract with Tresóna Because She Used a Personal DBA for Custom Arrangements

46.     Anita Cracauer ("Cracauer") established Custom Arrangements as a DBA in 2003. She has maintained Custom Arrangements as a DBA to the present day in her own personal capacity and not as a DBA for Custom Arrangements LLC.

47.     Cracauer established Custom Arrangements LLC in 2012, and continued using her DBA Custom Arrangements to label Custom Arrangements LLC's products (*see attached* Exhibit C).

48.     In addition, because the affairs of Anita Cracauer and Custom Arrangements LLC are intermingled, and they do not distinguish between themselves in their dealings, Anita Cracuaer is personally liable.

8

**COUNT ONE**
**BREACH OF CONTRACT**
**(Against Legg)**

49.    Tresóna incorporates by reference each and every allegation contained in the

preceding paragraphs as though fully set forth herein.

50.    Legg and Tresóna made a binding agreement.

51.    Legg breached the Agreement, and Tresóna is entitled to recover direct

damages and consequential damages arising from Legg's breach of the Agreement.

**COUNT TWO**
**INTENTIONAL INTERFERENCE WITH CONTRACT**
**(Against Cracauer and Custom Arrangements LLC)**

52.    Tresóna incorporates by reference each and every allegation contained in the

preceding paragraphs as though fully set forth herein.

53.    Tresóna had a contract with Legg, and CA knew about it.

54.    CA intentionally interfered with Legg's contract with Tresóna, and the

interference was wrongful.

55.    Tresóna was damaged as a result of said interference.

**COUNT THREE**
**INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCY**
**(Against Cracauer and Custom Arrangements LLC)**

56.    Tresóna incorporates by reference each and every allegation contained in the

preceding paragraphs as though fully set forth herein.

57.    Tresóna had business expectancies related to Legg.

58.    CA operates on a print (tangible) stock arrangement basis. This allows CA to

only pay 15% royalties from product sale to Hal Leonard.

59.   Tresóna operates on a digital (intangible) stock arrangement basis, requiring Tresóna to pay 50% royalties to music copyright holders (including Hal Leonard).

60.   Legg's custom arrangement of "Black Sheep" can be used by thousands of choirs in the United States. CA's illegal use of Legg's custom arrangement as a stock arrangement greatly undermines Tresóna's business expectancies.

61.   Because CA operates using an 85%-15% split on stock arrangement sales royalties with music publishers, CA has the ability to give 50% of the sales proceeds back to the custom arranger (Legg) and keep 35% for itself.

62.   Because Tresóna operates using a 50%-50% split on stock arrangement sales royalties with music publishers, Tresóna cannot offer 50% of sales proceeds back to the custom arranger (Legg) as Tresóna would consequently garner nothing for its work.

63.   Tresóna generally expects to pay 25% (five times the industry standard) from the sales proceeds of the stock arrangement ("Black Sheep") to the custom arranger (Legg) while retaining 25% for Tresóna's work.

64.   Legg had a clear incentive to give CA the custom arrangement of "Black Sheep" in return for an amount equal to fifty percent (50%) of the purchase price for each sale made, instead of a 25% royalty he would receive from Tresóna for each sale made.

65.   Tresóna cannot financially compete with CA's illicit business practices.

66.   CA knows this and intentionally interfered with Tresóna's business expectancies.

67.   The breach of Legg's Agreement with Tresóna thus enriches Legg and CA at Tresóna's expense.

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 201
MESA, AZ 85213

10

68.  Tresóna was damaged as a result of said interference.

**COUNT FOUR**
**VIOLATION OF LANHAM (TRADEMARK) ACT**
**(Against Anita Cracauer and Custom Arrangements LLC)**

69.  Tresóna incorporates by reference each and every preceding paragraph as though fully set forth herein.

70.  CA, in the course of its commercial advertising or promotions for its own services, made a false representation of fact with the intent that custom arrangers would use its services rather than those of its competitors (e.g. Tresóna) in breach of the Lanham (Trademark) Act Title 15 U.S.C. §1125(a)(1)(B).

71.  CA advertises to custom arrangers (e.g. Legg) that it has the ability to accept custom arrangements licensed by Tresóna and sell them to consumers as stock arrangements. This is a false representation of fact.

72.  CA advertises to consumers that it has the ability to grant exclusive use of a stock arrangement created from a custom arrangement licensed by Tresóna. This is a false representation of fact.

73.  Tresóna suffered, and continues to suffer, damage due to CA's false representations of fact and is entitled to recover the damages suffered by CA.

**COUNT FIVE**
**LIABILITY UNDER PIERCING OF CORPORATE VEIL**
**(Against Anita Cracauer and Custom Arrangements LLC)**

74.  Tresóna incorporates by reference each and every preceding paragraph as though fully set forth herein.

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. ARBOLEDA ROAD, SUITE 201
MESA, AZ 85213

11

75.     Cracauer is personally liable for all Custom Arrangements' acts and omissions in this case.

## COUNT SIX
## CONSPIRACY
### (Against Legg, Cracauer and Custom Arrangements LLC)

76.     Tresóna incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

77.     CA and Legg agreed to work together to accomplish various torts against Tresóna, as alleged above.

78.     As explained above, CA and Legg knowingly engaged in acts and omissions in furtherance of the torts alleged above, and those acts and omissions substantially aided in the commission of the foregoing torts.

79.     CA and Legg in fact committed the torts as set forth above.

80.     In engaging in the foregoing conduct, CA and Legg agreed to accomplish an unlawful purpose, and/or accomplish an otherwise lawful purpose or object by unlawful means.

81.     Tresóna was damaged as a result of the foregoing conduct.

### PRAYER

WHEREFORE, Counterclaimant prays for judgment against Defendants as follows:

A.      For compensatory, incidental, consequential, and punitive damages in an amount to be proven at trial;

B.      For reasonable attorneys' fees and costs incurred in bringing this action, pursuant to Ariz. Rev. Stat. § 12-341.01 and all other applicable law;

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. ARBOLETA ROAD, SUITE 201
MESA, AZ 85213

12

C.  For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full;

D.  For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this  11  day of August, 2014.

GUNDERSON, DENTON & PETERSON, P.C.

Brad A. Denton, Esq.
1930 N. Arboleda Road, Suite 201
Mesa, AZ 85213
*Attorneys for Tresóna*

GUNDERSON, DENTON & PETERSON, P.C.
ATTORNEYS AND COUNSELORS AT LAW
1930 N. Arboleda Road, Suite 201
Mesa, AZ 85213

13

EXHIBIT A


(/)

# Tresóna Licensing Exchange

ARRANGEMENTS (/users/arrangements.php)   ARRANGER REVENUE (/users/arrangerRevenueReport.php)   PROFILE (/users/profile.php)   LOGOUT (/users/arrangements.php?action=logout)   LICENSE LOOKUP (/license-lookup.php)

**Work For Hire Agreement(s)**

Tresóna Multimedia



## COPYRIGHT WORK MADE FOR HIRE AGREEMENT

This Agreement is entered into as of Monday, August 11, 2014, by David Legg, a(n) individual with a principal office located at

4751 Wind Surf Way Unit 346
San Diego,CA 92154
US

This Arrangement Permission agreement is in relation to creation of a digital arrangement of a DIGITAL DERIVATIVE VISUAL REPRESENTATION and or a PRINT ARRANGEMENT ("Arrangement") of

BLACK SHEEP ("Original Song") by VIRGINIA CLAIRE WIGMORE,VIRGINIA CLAIRE WIGMORE,VIRGINIA CLAIRE WIGMORE,BRAD BUTCH WALKER,BRAD BUTCH WALKER,BRAD BUTCH WALKER ("Original Song Writers")

to be arranged by Arranger for use by Nitro Show Choir ("Music Organization") on behalf of the original copyright owner(s) ("Arrangement Copyright Owner(s)") identified in the cover sheet to the sheet music governed by this Agreement.

1. Arranger hereby accepts engagement by Tresóna Multimedia, LLC ("Tresóna"), on behalf of the Arrangement Copyright Owner(s), to create an Arrangement of the Original Song in print form for the exclusive use of Music Organization.

2. As partial consideration for this Arrangement Permission being granted, the results and proceeds of Arranger's services hereunder are works specially ordered and commissioned by TresÃ³na on behalf of the Arrangement Copyright Owner(s) as supplementary works and/or derivative works and are "works made for hire" within the meaning of the United States Copyright Act. If it is determined that the Arrangement does not qualify as a "work made for hire," then Arranger hereby grants, assigns and transfers to the Arrangement Copyright Owner(s) and their assigns, in amounts equal to their respective percentage ownerships of the Original Song, exclusively, perpetually and throughout the universe all right, title and interest in and thereto, and all renewals and extensions thereof. Arranger agrees to execute and deliver to Tresóna any and all documents or instruments which Tresóna may request in order to confirm the Arrangement Copyright Owner(s) acquisition and/or title to the Arrangement as described herein. In the event that Arranger fails to execute any such documents needed to effectuate the intent of this Agreement, or Tresóna is not paid the agreed upon license fee for this arrangement permission, the Arrangement Permission granted through this Agreement shall be considered revoked and Arranger agrees to destroy all copies of the Arrangement, print and digita, in Arranger's possession, and Arranger will be notified to notify Music Organization that the Arrangement Permission was revoked and that it should destroy all copies of the Arrangement, print and physical, in Music Organization's possession.

3. It is specifically understood and agreed that no royalties or other sums shall be payable to Arranger by Tresóna, the Arrangement Copyright Owner(s) or their assigns, or on behalf of Arranger, with respect to any exploitation of the Arrangement, and that neither the Arranger nor the music organization has any right to sell, resell, reproduce, disseminate, lease, rent and/or use the Arrangement in any manner whatsoever beyond the scope of the grant of rights hereunder.

4. Arranger agrees to upload the final Digital Arrangement in PDF form to Tresóna upon completion to their account at the Tresóna Licensing Exchange, where the arrangement will be marked with the proper copyright notation and made available for downloading by Music Organization).

5. Arranger is an independent contractor and engages in the operation of its own business. Arranger has no authority to enter into any contracts or assume any obligations for Tresóna, or to make any warranties or representations on behalf of Tresóna. Nothing in this Agreement shall be considered to establish an employment relationship or a relationship of partners or joint venturers between Tresóna and Arranger.

6. Arranger agrees to execute this Agreement directly and not through an agent of Arranger. Signor understands that electronic signatures not made directly by Arranger on this form are not acceptable and may negate the Arrangement Permission requested and any copyright right that may appear to emanate from it.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that electronic and facsimile signatures are as effective as if originals.

Arranger
By: David Legg
Signed: 2013-06-24 09:32:57

Back

TERMS OF USE (/pages/terms-of-use.php)

© 2014 Tresona Multimedia, LLC. All Rights Reserved.

PRIVACY STATEMENT (/pages/privacy-statement.php)

**EXHIBIT B**

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresona Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Piano/Vocal

# Black Sheep

*as recorded by Gin Wigmore*

arrangement by DAVID LEGG





This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresona Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep



This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep                                                                                    3



This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep





This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep

5



This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep





This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep

7





This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

Black Sheep

8





This arrangement is authorized for the exclusive use of Nitro Show Choir licensed by
Tresóna Multimedia, LLC. Tresóna License Number 11861 with an expiration date of 06/22/16.

EXHIBIT C

Piano/Vocal

# Black Sheep

*as recorded by Gin Wigmore*

Words and Music by BUTCH WALKER & GIN WIGMORE
arrangement by DAVID LEGG





Copyright © 2011 EMI April Music Inc., I Eat Publishing For Breakfast and Native Tongue Music Publishing
(APRA) c/o Native Tongue America (ASCAP) This arrangement Copyright © 2014 EMI April Music Inc., I
Eat Publishing For Breakfast and Native Tongue Music Publishing (APRA) c/o Native Tongue America
(ASCAP) All Rights on behalf of EMI April Music Inc. and I Eat Publishing For Breakfast Administered by
Sony/ATV Music Publishing LLC, 8 Music Square West, Nashville, TN 37203 International Copyright Secured
All Rights Reserved Reprinted by Permission of Hal Leonard Corporation



custom arrangements

2                                                    Black Sheep





Black Sheep





4

Black Sheep







C
S 1
Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. I
S 2
Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. I
A
Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. Ah - Ooh, bah, bop, bop. I
solo
sheep. I'm a black sheep.
36

D
S 1
was - n't born a beau - ty queen but I'm o - kay with that. May - be ra - di - o won't mind if I sing a lit - tle flat. I
S 2
was - n't born a beau - ty queen but I'm o - kay with that. May - be ra - di - o won't mind if I sing a lit - tle flat. I
A
was - n't born a beau - ty queen but I'm o - kay with that. May - be ra - di - o won't mind if I sing a lit - tle flat. I
40

6                                      Black Sheep





Black Sheep





8                                          Black Sheep





**EXHIBIT D**



Home   About   FAQ   Contact   0 items in cart Login or Register

Search

*Your source for high-end, competition-ready show choir arrangements.*

## Search the Catalog By:

Voicings ▾        Genres ▾        Show Functions ▾        Arranger ▾        Special Categories ▾        Price ▾

### Purchasing an Arrangement
How do I purchase an arrangement?
How will I receive the arrangement?
When will I receive the arrangement?
Do you offer returns/refunds?
What about making copies?
Are these arrangements legal and copyright protected?

### Making Changes
Can I have the key changed?
Can I have the arrangement revoiced?
What about other changes or score revisions?

### Rehearsal/Performance Issues
Can I post the music online for my students?
Can I find out if another group is using an arrangement in competition?
How can I obtain exclusive competition rights for an arrangement?

### Contacting Us
How can I contact you with other questions?
How do I request a commission?
Can I submit an arrangement for publication?

### How do I purchase an arrangement?
Simply add the arrangement to your shopping cart. To complete the purchase, you will need to choose whether you'd like to receive an invoice by email, or whether you'd like to use your credit card or amazon.com account to pay immediately. Please note - immediate downloads are ONLY available to customers who use the credit card or amazon.com payment option, or verified current customers.

### How will I receive the arrangement?
During the checkout process, you will have the option to choose to immediately download your files (credit card or amazon.com payments or verified current customers only), to have a hard copy mailed to you (shipping charge extra), or both. For regular delivery, your files will be sent in pdf and mp3 format on a data CD. For edelivery, you will be prompted to create an account (new customers) and upon login you will have access to all files purchased.

### When will I receive the arrangement?
If you choose the have a hard copy mailed to you - you will receive it by first class mail. For verified current customers, it will be shipped no later than the day after your order is placed. For new customers please note that if you are not a verified school employee, your order will not be shipped until funds are first received.

### Do you offer returns/refunds?
Unfortunately, we do not offer returns or refunds. Please be sure that you are certain of your purchase before completing your order. You can do this by examining the preview vocal score, sound file, instrumentation list, and asking any other relevant questions about the chart before your purchase.

### What about making copies?
With your purchase, you are authorized to make as many copies as needed for use by your performing group. You are not authorized to distribute copies to give away, share, or sell the arrangement to other groups.

### Are these arrangements legal and copyright protected?

All arrangements sold in our catalog are properly licensed by their copyright owners. You will find the appropriate copyright documentation on the bottom of the first page of every score.

### Can I have the key changed?

Yes, upon request we will change the key and email new scores. We are NOT able to ensure range accuracy in the new key.

### Can I have the arrangement revoiced?

Yes, you may request to revoice any arrangement. Costs and completion time will vary between arrangers, so email to find out more details.

### What about other changes or score revisions?

Unfortunately, other than key changes or revoices, we are not able to offer any other score revisions. You as director may make slight adaptations to the score/cuts to accommodate the needs of your show.

### Can I post the music online for my students?

Unfortunately, you are not allowed to post any scores online for your students (or anyone else) to freely access.

### Can I find out if another group is using an arrangement in competition?

Yes! During the checkout process, you will be prompted to indicate whether a piece will be used in competition. This information will be available if needed simply by email request. Of course, the honor system is used, so please be sure to be completely accurate when providing competition info. Custom Arrangements cannot be responsible for inaccurate information given. The only way to be sure another group will not compete with your chosen piece is to purchase a buyout at the beginning of the season.

### How can I obtain exclusive competition rights for an arrangement?

If you would like exclusive performance rights to an arrangement for the competition season, you may purchase a "buyout" of that chart. No further sales to any competing group will be made until March 1st of the next year. Buyouts are available at the regional and national level. Regional buyouts, available at 3 times the purchase price, will end all sales to competing groups in your region (Midwest, South, East, West). National buyouts, available at 6 times the purchase price, will end all sales to competing groups in the entire United States.

### How can I contact you with other questions?

The best way to reach us with a question is by email. All emails are answered as quickly as possible, within the same day received. For complete contact info, click "contact" at the top menu bar.

### How do I request a commission?

Custom Arrangements will do its best to handle your custom commission request. Click here to complete the request.

### Can I submit an arrangement for publication?

Custom Arrangements is happy to accept submissions for publication. Simply email with a piano/vocal score and audio file. Please be aware that we are only looking for top quality, specifically "show choir" charts.