1   **WO**

2

3

4

5

6   **IN THE UNITED STATES DISTRICT COURT**

7   **FOR THE DISTRICT OF ARIZONA**

8

9   Tresóna Multimedia LLC,                        No. CV-14-02141-PHX-DGC

10                     Plaintiff,                  **ORDER**

11   v.

12   David Legg, et al.,

13                     Defendants.

14

15          Defendants Custom Arrangements LLC ("CALLC") and Anita Cracauer have

16   filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim.

17   Doc. 10.  Defendant David Legg has also filed a motion to dismiss for lack of jurisdiction

18   and failure to state a claim.  Doc. 23.  Plaintiff Tresóna Multimedia LLC has requested an

19   entry of default against Defendant Legg.  Doc. 24.  All of the motions are fully briefed.

20   The Court will grant Defendants CALLC and Anita Cracauer's motion to dismiss in part,

21   deny Defendant Legg's motion to dismiss, and deny Plaintiff's request for entry of

22   default.[1]

23   **I.     Background.**

24          Plaintiff Tresóna Multimedia LLC is a music copyright licensing company that is

25   registered in the State of Arizona.  Doc. 1-1, ¶ 1.  Tresóna owns a website that sells

26   custom arrangement licenses for particular pieces of music.  *Id.*, ¶ 12.  These licenses

27

28          [1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

allow the purchaser to arrange a piece of music for a client (typically a music organization or a "show choir"). *Id.* Defendant David Legg, who resides in San Diego, California, applied for a custom arrangement license for the song "Black Sheep" on June 22, 2013. *Id.*, ¶¶ 3, 14. On June 23, 2013, Legg signed the "Work for Hire Agreement" for this song. *Id.*, ¶ 14 & Ex. A.[2] Tresóna claims that the Agreement gave Legg the right to arrange Black Sheep for one client – "Nitro Show Choir" – and nothing more. *Id.*, ¶ 16 & Ex. A. Tresóna argues that Legg breached the Agreement by allowing Defendants CALLC and Anita Cracauer to sell his custom arrangement as a "stock arrangement" on their website. *Id.*, ¶ 17.

CALLC is registered in Minnesota and sells licensed arrangements of songs. *Id.*, ¶ 5. Anita Cracauer resides in Minnesota and owns and operates CALLC. *Id.*, ¶¶ 4, 6. Tresóna alleges that CALLC has a history of contacting customers and informing them that it can sell arrangements licensed by Tresóna. *Id.*, ¶ 22. Tresóna also claims that CALLC falsely advertises it ability to grant exclusive rights to particular arrangements, when in fact these arrangements have been licensed by other companies. *Id.*, ¶¶ 34-35.[3] Tresóna alleges that CALLC told Legg that it had permission to sell Legg's arrangement of Black Sheep and thereby induced him to breach his Tresóna contract. *Id.*, ¶ 31-33.

Tresóna sues CALLC and Cracauer for intentional interference with contract, intentional interference with business expectancy, false advertising under the Lanham Act, "liability under piercing of corporate veil," and conspiracy. *Id.*, ¶¶ 52-81. Tresóna sues Legg for breach of contract and conspiracy. *Id.*, ¶¶ 49-51, 76-81. CALLC and Cracauer argue that the Court lacks jurisdiction over them and that Tresóna has failed to state a claim. Doc. 10. Legg also argues lack of jurisdiction and failure to state a claim. Doc. 23.

---

[2] When creating an online account with Tresóna, Legg also allegedly consented to Tresóna's User Agreement. *See* Doc. 31 at 24-28.

[3] In this line of business, the ability to grant exclusive rights in a particular arrangement is important. *See* Doc. 1-1, ¶¶ 34-45. Show choirs often purchase these arrangements so they can use them in a competition, and want to ensure that other show choirs will not be using the same arrangement. *Id.*, ¶ 35-37.

1    **II.    CALLC and Cracauer's Motion to Dismiss.**

2         **A.    Personal Jurisdiction.**

3         "Federal courts ordinarily follow state law in determining the bounds of their

4    jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Arizona

5    has authorized its courts to exercise jurisdiction to the maximum extent permitted by the

6    Due Process Clause of the Constitution. *See* Ariz. R. Civ. P. 4.2(a); *see Menken v. Emm*,

7    503 F.3d 1050, 1056 (9th Cir. 2007). Under the Due Process Clause, a court may

8    exercise jurisdiction over a person who is not physically present within the territorial

9    jurisdiction of the court. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The

10   nonresident generally must have certain minimum contacts with the forum so that the

11   maintenance of the suit does not offend traditional notions of fair play and substantial

12   justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

13        The Ninth Circuit uses a three-part test to analyze whether a party's minimum

14   contacts satisfy due process. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715

15   F.3d 716, 741-42 (9th Cir. 2013), *cert. granted sub nom. Oneok, Inc. v. Learjet, Inc.*, 134

16   S. Ct. 2899 (2014). Under this three-part test, specific jurisdiction exists only if: (1) the

17   defendant purposefully availed himself of the privileges of conducting activities in the

18   forum, thereby invoking the benefits and protections of its laws, or purposely directed

19   conduct at the forum that had effects in the forum; (2) the claim arises out of the

20   defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.

21   *See id.* at 741-42 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802

22   (9th Cir. 2004)). The Ninth Circuit evaluates "purposeful direction under the three-part

23   'effects' test traceable to the Supreme Court's decision in *Calder v. Jones* . . . . '[T]he

24   'effects' test requires that the defendant allegedly have (1) committed an intentional act,

25   (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is

26   likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803 (quoting

27   *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (citing *Calder v. Jones*,

28   465 U.S. 783 (1984)).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 800). The Court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, but factual disputes are resolved in Plaintiff's favor. *Id.*.

### 1.     Custom Arrangements.

#### a.     Purposeful Direction.

This Court's jurisdiction over CALLC turns on the first-prong of the Ninth Circuit's test for personal jurisdiction: whether Defendants expressly aimed their conduct at Arizona. Tresóna cites Ninth Circuit precedent stating that the express aiming requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Menken*, 503 F.3d at 1057. Defendants argue that mere knowledge of Tresóna's location in Arizona is no longer sufficient under the Supreme Court's decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *See* Doc. 30 at 6-11. The Court agrees.[4]

---

[4] In their motion to dismiss, Defendants were unclear as to which test for specific jurisdiction they assert. Doc. 11 at 8-11. The Ninth Circuit has held that a district court should apply different jurisdictional tests in contract and tort cases. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). For contract cases, the Ninth Circuit applies the "purposeful availment" test. *See, e.g., Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). For tort cases, the Ninth Circuit applies the "effects test." Tresóna argues that Defendants inappropriately relied on the "purposeful availment" test in their motion to dismiss and have therefore waived any argument regarding the effects test and *Walden v. Fiore*. *See* Doc. 26 at 3, 11. The Court disagrees. Although Defendants' motion is not entirely clear, the motion does cite cases that employ the effects test. *See* Doc. 11 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997); *Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987)). In its response, Tresóna also reserved the right to file

As clarified by *Walden*, personal jurisdiction does not exist merely because a defendant engages in wrongful conduct targeted at a plaintiff whom the defendant knows to be located in a particular state. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 1122.

Tresóna claims that CALLC, a Minnesota company, acquired a musical arrangement from Legg, a California resident, knowing that this would interfere with a contract between Legg and Tresóna, an Arizona company. The only link between CALLC and Arizona in this acquisition is the location of Tresóna. Under *Walden*, that is not enough to establish personal jurisdiction. CALLC must have engaged in conduct that connects it to Arizona in a meaningful way. *Walden*, 134 S. Ct. at 1125.

But when this fact is added to other relevant facts alleged in the complaint – that CALLC intentionally induced Legg to breach his contract with Tresóna and specifically engaged in false advertising about arrangements licensed by Tresóna – the Court finds that a prima facie case of jurisdiction has been established. Tresóna alleges that CALLC engaged in conduct directly intended to cause breach of a Tresóna contract, and publicly advertises its ability to accept and grant exclusive use of arrangements licensed by Tresóna. Doc. 1-1, ¶¶ 71-72.[5] Tresóna also alleges that CALLC "contacts custom arrangers personally, informing them it can sell the custom arrangements licensed by Tresóna as stock arrangements[.]" *Id.*, ¶ 22. As illustrated by two Ninth Circuit cases, this conduct satisfies the effects test.

---

supplemental briefing on *Walden v. Fiore*. Doc. 26. The Court finds supplemental briefing unnecessary. Tresóna has fully briefed its position on the effects test and devoted a portion of its brief to *Walden v. Fiore*.

[5] Tresóna attaches a page from CALLC's website to the complaint (Doc. 1-1, Ex. D), but the page does not contain all of the statements described in the complaint as appearing on CALLC's website. *See* Doc. 1-1, ¶¶ 35, 38, 71, 72. CALLC has not provided affidavits or other evidence to show that the alleged statements are not contained on its website or were not made by CALLC, and so the Court will accept these allegations of the complaint as true.

In *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004), Plaintiff CE, an Arizona company, claimed that New Sensor, a New York company, had intentionally interfered with its exclusive distributor agreement for Jensen speakers.  In finding express aiming, the court highlighted the following facts:

> CE alleges that it had a previous business relationship with New Sensor spanning a period of several years.  New Sensor was aware that CE was based in Arizona and was the sole United States distributor of Jensen speakers.  CE alleges that New Sensor's actions were intended to undermine CE's status as the sole distributor of Jensen speakers in the United States. . . .  [Based on these facts,] the first (intentional act) and second (aimed at Arizona) requirements for specific personal jurisdiction are met.

*Id.* at 1111-12.  Here also, CALLC knows of Tresóna's presence in Arizona.  *See* Doc. 26 at 22-24 (Declaration of Mark Greenburg).  Tresóna alleges that CALLC falsely advertises its ability to accept arrangements licensed by Tresóna (Doc. 1-1, ¶¶ 71-72), an action that arguably "intended to undermine" Tresóna's business.

In *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010), Brayton Purcell and Recordon were two law firms that specialized in elder abuse law.  *Id.* at 1126.  Brayton claimed that Recordon's website featured material that it had copied from Brayton's website.  *Id.* at 1127.  Finding that Recordon had expressly aimed its conduct at California, the court emphasized that "[g]iven the paucity of firms with elder abuse expertise, any use of the infringing material by Recordon to advertise on its website places Recordon in direct competition with Brayton Purcell throughout California." *Id.* at 1129.  Here also, Tresóna and CALLC operate in the specialized field of licensing custom arrangements for musical performances, most often by show choirs.  Doc. 1-1.  By falsely advertising its ability to grant exclusive use of arrangements licensed by Tresóna (Doc. 1-1, ¶¶ 35, 71-72), CALLC was placing itself "in direct competition" with Tresóna throughout Arizona.  In addition, CALLC allegedly induced Legg to breach his contract with Tresóna by making false statements.  Doc. 1-1, ¶¶ 31-33.

These cases do not appear inconsistent with *Walden*.  The central lesson of *Walden* is that personal jurisdiction does not exist merely because an out-of-state defendant

commits tortious acts against a plaintiff whom the defendant knows to reside in a particular state. Rather, jurisdiction must be based on a defendant's contacts with the forum. Case law has established that certain actions by an out-of-state defendant – such as publishing a libelous story about a famous California resident (*Calder*), taking extensive action to undermine a person's business (*CE Distrib.*), or directly competing with a person (*Brayton*) – create contacts with that person's forum.

By inducing Legg to breach his contract with Tresóna and falsely advertising its ability to accept and grant exclusive use of arrangements licensed by Tresóna, CALLC took actions to undermine and directly compete with Tresóna, thereby connecting itself to the State of Arizona. As required under the effects test, Tresóna has also shown that CALLC intentionally committed these acts with knowledge that Tresóna would suffer harm in Arizona. *See Schwarzenegger*, 374 F.3d at 803. Based on these allegations, Tresóna has satisfied the first part of the test for specific jurisdiction.

### b.    "Arising Out Of."

The next question is whether Tresóna's claims arise out of these forum-related activities. The Ninth Circuit uses "a 'but for' test to determine whether a particular claim arises out of forum-related activities[.]" *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Tresóna has asserted four claims against CALLC: intentional interference with contract, intentional interference with business expectancy, false advertising under the Lanham Act, and conspiracy. Doc. 1-1, ¶¶ 52-81.[6]

Clearly, Tresóna's false advertising claim would not have arisen but for CALLC's alleged false advertising. Similarly, Tresóna's conspiracy claim against CALLC appears to be based on CALLC and Cracauer's alleged conspiracy to commit false advertising and acquire Tresóna's music. The conspiracy claim, therefore, also arises out of CALLC's forum-related activities.

---

[6] Tresóna pleads a separate claim of "liability under piercing of corporate veil." Doc. 1-1, ¶¶ 74-75. As discussed below, a "request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself." *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999).

Tresóna's intentional interference claims also arise out of CALLC's forum-related activities. Tresóna alleges that CALLC, while knowing of Tresóna's Arizona location and while engaging in false advertising about its ability to market arrangements licensed by Tresóna, intentionally induced Legg to breach his contract with Tresóna by making false representations. Tresóna's complaint alleges that CALLC induces such breaches not only by its false advertising regarding Tresóna-licensed arrangements, but also by directly contacting arrangers of Tresóna's songs and telling them that it can sell their arrangements. *Id.*, ¶ 22. Such direct representations, like false public advertising about CALLC's ability to market Tresóna's music, are directly aimed at Tresóna, and the intentional interference claims appear to arise from such contacts. *Id.*, ¶¶ 53, 54.

### c.    Reasonableness.

The final question is whether the exercise of jurisdiction would be reasonable. To avoid jurisdiction based on unreasonableness, CALLC "must 'present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable.'" *Ballard*, 65 F.3d at 1500 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (emphasis in original); *see also Tresóna & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1089 (9th Cir. 2000) (finding that a defendant must "demonstrate a 'compelling case,' focused on the seven specific factors . . . in order to establish unreasonableness"). CALLC has not argued or otherwise made a compelling case that jurisdiction would be unreasonable. The Court therefore concludes that the reasonableness requirement is met. Tresóna has made a prima facie case of personal jurisdiction over CALLC.

### 2.    Defendant Anita Cracauer.

Defendant Anita Cracauer is a Minnesota resident and the sole member of Custom Arrangements LLC. Doc. 12. The Court could exercise jurisdiction over Anita Cracauer for two possible reasons: (1) she created her own contacts with Arizona that are sufficient for this Court to exercise jurisdiction, *see, e.g.*, *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 859-60 (D. Ariz. 1999) (citing *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 522

(9th Cir. 1989)); or (2) CALLC is her "alter ego" and jurisdiction over the company creates jurisdiction over her, *see, e.g.*, *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393-94 (9th Cir. 1984), *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1177 (D. Ariz. 2010). Tresóna relies on both reasons, pointing to Cracauer's individual contacts with Arizona and emphasizing that CALLC is her alter ego. Doc. 26 at 12-13.

Tresóna has failed to make a prima facie showing that Cracauer's individual contacts are sufficient for personal jurisdiction. Tresóna's complaint does not differentiate between the actions of CALLC and Cracauer. *See* Doc. 1-1, ¶ 18. Tresóna argues that the Court should impute CALLC's contacts to Cracauer for the purpose of analyzing personal jurisdiction (Doc. 26 at 12-13), but this is the same as treating CALLC as Cracauer's alter ego, an issue distinct from whether Cracauer's personal contacts with Arizona are sufficient.

Cracauer's only contact with Arizona is Tresóna's assertion that an Arizona company lists Cracauer as a music arranger. Doc. 26 at 13, 37. But personal jurisdiction does not exist "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). Cracauer states in a declaration that she never asked or gave permission to the Arizona company to list her name on its website. Doc. 12, ¶ 11; *see also Marvix Photo*, 647 F.3d at 1223 (finding that for a motion to dismiss for lack of jurisdiction, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"). What is more, Tresóna's claims against Cracauer do not arise out of her relationship with another Arizona company.

As for the argument that CALLC is the alter ego of Cracauer, Tresóna has made a prima facie case. "Under the 'alter-ego' doctrine, a nonresident defendant may be subject to personal jurisdiction even if the defendant has not had any contact with the forum state." *Patterson*, 684 F. Supp. 2d at 1177 (citing *Davis*, 885 F.2d at 520-21). Thus, jurisdiction may exist "in cases in which the corporation is the agent or alter ego of the individual defendant; or where there is an identity of interests between the

1    corporation and the individuals." *Davis*, 885 F.2d at 520-21 (citations omitted); *see also*

2    *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).  Under Arizona law, "corporate

3    status will not be lightly disregarded."  *Chapman v. Field*, 602 P.2d 481, 483 (Ariz.

4    1979).  To demonstrate alter ego status, a plaintiff "must prove both (1) unity of control

5    and (2) that observance of the corporate form would sanction a fraud or promote

6    injustice."  *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991).

7            Tresóna alleges that Cracauer registered CALLC as a personal "doing business as"

8    in 2003.  Doc. 1-1, ¶ 6.  Cracauer then registered CALLC in 2012.  *Id.*  Tresóna further

9    alleges that the affairs of CALLC and Cracauer "are intermingled, and they do not

10   distinguish between themselves in their dealings."  *Id.*, ¶ 48.  Cracauer's declaration does

11   not deny these allegations.  Doc. 12.  Furthermore, Cracauer states that she is "the sole

12   member of [CALLC]."  *Id.*   Considering the affidavit, and taking the uncontroverted

13   statements in the complaint as true, *see Schwarzenegger*, 374 F.3d at 800, the Court finds

14   a prima facie case that there is an "identity of interests" between CALLC and Cracauer.

15   *See Davis*, 885 F.2d at 520-21.  Furthermore, assuming the truth of Tresóna's tort claims,

16   observing the corporate form might promote injustice.

17           This finding, however, is preliminary and made under a prima facie burden of

18   proof.   The parties have not addressed many of the factors that are relevant in

19   determining whether a member of a corporation should be held personally liable.  *See,*

20   *e.g.*, *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 728-29 (Ariz. Ct. App. 1978).  The

21   Court also notes that a sole member of a limited liability company is not automatically

22   the company's alter ego.  *See, e.g.*, *Honeywell, Inc. v. Arnold Const. Co.*, 654 P.2d 301,

23   307 (Ariz. Ct. App. 1982).  But at the motion to dismiss stage, the Court finds that it has

24   jurisdiction over Cracauer to the same extent it has jurisdiction over CALLC.

25           **B.       Failure to State a Claim.**

26                    **1.       Pleading Standards.**

27           When analyzing a complaint for failure to state a claim to relief under Rule

28   12(b)(6), the well-pled factual allegations are taken as true and construed in the light

1   most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

2   Cir. 2009).   Legal conclusions couched as factual allegations are not entitled to the

3   assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are

4   insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

5   *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).   To avoid a Rule 12(b)(6) dismissal, the

6   complaint must plead enough facts to state a claim to relief that is plausible on its face.

7   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

8       Claims of fraud or mistake must be stated with "particularity."  Fed. R. Civ. P.

9   9(b).   Several district courts in the Ninth Circuit have applied Rule 9(b)'s heightened

10  pleading standards to claims of false advertising under the Lanham Act, which Tresóna

11  brought against CALLC and Cracauer.[7]  Although not directly addressing this issue, the

12  Ninth Circuit has approved applying Rule 9(b)'s heightened pleading standards to claims

13  that are "grounded in fraud" or "sound in fraud."  *Vess v. Ciba-Geigy Corp. USA*, 317

14  F.3d 1097, 1103-04 (9th Cir. 2003).  Tresóna's claim of false advertising sounds in fraud.

15  Tresóna has alleged that CALLC advertises its ability to sell arrangements licensed by

16  Tresóna, "knowing" that it may not do so.  *See* Doc. 1-1, ¶¶ 41, 71-72.  The Court,

17  therefore, finds that heightened pleading requirements apply to Tresóna's claim of false

18  advertising.

19      Under Rule 9(b), "a party must state with particularity the circumstances

20  constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a

21  person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "While statements of the

22  time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory

23  allegations of fraud are insufficient."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d

24  531, 540 (9th Cir. 1989).  "[T]he pleader must state the time, place, and specific content

25  _____

26      [7] *See, e.g., ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, No. CV 11-01056-
    PHX-NVW, 2011 WL 6296833, at *5 (D. Ariz. Dec. 16, 2011); *Sw. Windpower, Inc. v.*

27  *Imperial Elec., Inc.*, No. CV-10-8200-SMM, 2011 WL 486089, at *4 (D. Ariz. Feb. 4,
    2011); *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC.*, No. CIV-05-2832-PHX-MHM,

28  2006 WL 1441014, at *4 (D. Ariz. May 24, 2006); *CollegeNet, Inc. v. Xap Corp.*, No.
    CV-03-1229-HU, 2004 WL 2303506, at *4 (D. Or. Oct. 12, 2004).

1   of the false representations as well as the identities of the parties to the

2   misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

3   1401 (9th Cir. 1986).

4       **2. False Advertising.**

5      Tresóna claims that CALLC has falsely advertised its ability to grant exclusive use

6   of custom arrangements, in violation of § 43 of the Lanham Act. *See* Doc. 1-1, ¶ 69-73

7   (citing 15 U.S.C. § 1125(a)(1)(B)). Section 43 of the Lanham Act "explicitly furnishes a

8   private right of action 'against persons who make false and deceptive statements in a

9   commercial advertisement[.]'" *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir.

10   2010) (citation omitted). The following five elements make up a false advertising claim:

11      (1) a false statement of fact by the defendant in a commercial advertisement
12      about its own or another's product;

13      (2) the statement actually deceived or has the tendency to deceive a
   substantial segment of its audience;

14      (3) the deception is material, in that it is likely to influence the purchasing
15      decision;

16      (4) the defendant caused its false statement to enter interstate commerce;
   and

17      (5) the plaintiff has been or is likely to be injured as a result of the false
18      statement, either by direct diversion of sales from itself to defendant or by a
   lessening of the goodwill associated with its products.

19   *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C.

20   § 1125(a)(1)(B)).

21      To constitute a statement made in a commercial advertisement, the statement must

22   be: "(1) commercial speech; (2) by the defendant who is in commercial competition with

23   the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or

24   services. . . . [and the commercial speech] (4) must be disseminated sufficiently to the

25   relevant purchasing public to constitute 'advertising' or 'promotion' within that

26   industry." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1054 (9th Cir.

27   2008) (citation omitted). The commercial speech need not be made in a "classic

28   advertising campaign," but may rather consist of more informal types of promotion. *Id.*

Tresóna alleges generally that CALLC's website falsely advertises CALLC's ability to grant exclusive rights to use musical arrangements in a specific geographical area for a specific period of time.  Doc. 1-1, ¶ 35.   Tresóna also alleges that CALLC's website falsely claims the ability to accept and sell arrangements licensed by Tresóna. Doc. 1-1, ¶¶ 71-72.  Because these statements are alleged to be made on a website and as advertisements, the Court finds that Tresóna has alleged commercial advertisements as required by the Lanham Act.  *See Newcal*, 513 F.3d at 1054.  Tresóna also identified the specific false statements – the ability to provide exclusive use rights through a "buyout" and the ability to accept and sell Tresóna arrangements – as well as the maker of the statements and the place where they are made.  The Court concludes that Tresóna has sufficiently identified a "false statement of fact by the defendant in a commercial advertisement about its own or another's product," *Skydive*, 673 F.3d at 1110, as required for a claim of false advertising.

### 3.    Intentional Interference with Contract.

The tort of intentional interference with contract requires a plaintiff to prove: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly."  *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005).  Defendants do not seriously contest the first two elements.  Tresóna has plausibly alleged that (1) Legg had a contract with Tresóna by which he agreed not to "sell, resell, reproduce, disseminate, lease, rent and/or use the Arrangement in any manner whatsoever beyond the scope of the grant of rights hereunder," (Doc. 1-1 at 15); and (2) CALLC knew of this relationship (*id.*, ¶ 53).

Defendants argue that Tresóna's contract cannot be breached in the manner that Tresóna asserts.  *See* Doc. 10 at 12-13.  They argue that the language of the contract does not support the claim for breach and that "Tresóna itself had no rights in the arrangement by Legg, nor did it have rights in the original copyrighted song such that it could limit

Legg's future use of the arrangement on its own behalf." *Id.* These are essentially the same arguments made by Legg made with respect to Tresóna's breach of contract claim. Because the briefing provided by Legg and by Tresóna in response to Legg's motion is more detailed, the Court will address these issues below. As will be seen, the Court declines to rule at this stage on whether Tresóna's breach of contract claim is in fact a veiled copyright infringement claim. In addition, the contract can be read as prohibiting the reselling of Legg's arrangement of Black Sheep through CALLC. The Court therefore finds that Tresóna has plausibly alleged that CALLC intentionally interfered with the contract when it "told Legg that it had permission to resell the custom arrangement 'Black Sheep' licensed by Tresóna." *Id.*, ¶ 31.

Defendants also argue that Tresóna fails to allege that CALLC acted improperly when it induced Legg to breach his contract. In deciding whether a defendant acted improperly, a court must consider: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985). (quoting Restatement (Second) of Torts § 767).

Tresóna argues that Defendants CALLC and Cracauer acted improperly because "they induced Legg to breach his contract with Tresóna by promising Legg a 50% royalty, which they could only do if [CALLC] were a print stock arrangement company. However, [CALLC] is a digital stock company, meaning that it lied to the publishers to secure a favorable royalty rate it could promise to Legg." Doc. 25 at 15-16. In reply, Defendants argue that even if Tresóna's allegations are true, Tresóna "has merely alleged that CALLC told arrangers it would do something it was not permitted to do. . . . [B]ut this by itself is insufficient as a matter of law to establish tortious interference." Doc. 11 at 15.

Assuming CALLC intentionally lied to Legg about the royalty rates CALLC was entitled to give him for an arrangement licensed by Tresóna, then CALLC engaged in wrongful conduct with an improper motive.  *See* Restatement (Second) of Torts § 767. This conduct also interfered with Tresóna's legitimate interest in earning profits from re-selling Legg's arrangement.  Tresóna has stated a claim for intentional interference with contract.

### 4.    Intentional Interference with Business Expectancy.

In addition to its interference with contract claim, Tresóna has brought an "intentional interference with business expectancy" claim. Doc. 1-1, ¶¶ 56-68.  This tort has the same elements as intentional interference with contract, except that the interference must be with a prospective relationship between the plaintiff and another party.  *See Wagenseller*, 710 P.2d at 1041; *Dube v. Likins*, 167 P.3d 93, 99 (Ariz. Ct. App. 2007); Restatement (Second) of Torts § 766B.  "Before recovery can be had for interference with prospective business relations or for preventing a contract, it must appear that a relationship or contract would otherwise have been entered into." *Marmis v. Solot Co.*, 573 P.2d 899, 902 (Ariz. Ct. App. 1977); *Dube*, 167 P.3d at 101 ("[T]here must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship.") (citations omitted).

Tresóna's allegations, and the fair inferences from those allegations, are as follows: CALLC dishonestly obtained an 85%-15% royalty split from music publishers by falsely representing itself as a print publisher, when in fact it is a digital publisher (Doc. 1-1, ¶¶ 30, 58, 61); this royalty enabled CALLC to offer Legg a higher royalty for the Black Sheep arrangement than Tresóna can offer with its 50%-50% digital publisher split (*id*., ¶ 62); CALLC thereby induced Legg to breach its contract with Tresóna and sell his arrangement of Black Sheep through CALLC (*id*., ¶¶ 32-33, 64-67); Legg's arrangement of Black Sheep can be used by thousands of choirs in the United States (*id*, ¶ 60); and Tresóna lost the opportunity to sell to these choirs as a result of CALLC's improper actions (*id*., ¶ 60, 67-68).    The Court concludes that these allegations

1    sufficiently state a claim for intentional interference with business expectancies – the sale

2    of Legg's Black Sheep arrangement to thousands of choirs.

3         CALLC argues that Tresóna has failed to identify a specific business expectancy

4    with which it interfered.  An action for tortious interference with a business relationship

5    does require proof of "a business relationship evidenced by an actual and identifiable

6    understanding or agreement which in all probability would have been completed if the

7    defendant had not interfered." *Dube*, 167 P.3d at 101.  But courts have also "allowed the

8    plaintiff to allege a business expectancy with a class of individuals," provided "the group

9    [is] specifically identifiable." *Id.*  Tresóna has identified a specific group – choirs

10   throughout the United States that would be interested in purchasing Legg's arrangement

11   of Black Sheep.  This is sufficient at the pleading stage.  To survive summary judgment,

12   Tresóna will need to present evidence showing more than a mere "hope" that its business

13   expectancy would have been realized. *Marmis*, 573 P.2d at 902.  There must be evidence

14   of "an actual and identifiable understanding or agreement which in all probability would

15   have been completed if the defendant had not interfered." *Dube*, 167 P.3d at 101

16   (citations omitted).  But the Court finds Tresóna's present allegations sufficient to state a

17   claim.

18        CALLC also argues that Tresóna has failed to allege wrongful conduct.  As noted

19   above, however, Tresóna alleges that CALLC misrepresented the nature of its business as

20   print rather than digital, a misrepresentation that allowed it to offer more favorable

21   royalties than honest competitors such as Tresóna.  The Court concludes that this

22   constitutes a sufficient allegation of improper conduct to survive a motion to dismiss.

23                    **5.     Liability Under Piercing of Corporate Veil.**

24        Tresóna has listed as a separate claim "liability under piercing of corporate veil."

25   Doc. 1-1, ¶¶ 74-75.  As Defendants correctly point out, a "request to pierce the corporate

26   veil is only a means of imposing liability for an underlying cause of action and is not a

27   cause of action in and of itself." *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*,

28   185 F.3d 978, 985 (9th Cir. 1999).  Thus, Tresóna may not assert this as a separate claim,

but it may seek to impose liability for other claims by piercing the corporate veil.

### 6.   Conspiracy.

"'For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages.'" *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000) (quoting *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. 1988)); *see Wells Fargo Bank v. Ariz. Laborers*, 38 P.3d 12, 36 (Ariz. 2002).  Under Arizona law, "conspiracy is a derivative tort."  *Rowland*, 757 P.2d at 110.  Thus, to state a claim for conspiracy, a plaintiff must establish the existence of an underlying tort from which the purported conspiracy arises.  *Id.*

Tresóna argues that CALLC and Cracauer conspired with each other to commit the torts of interference with contract and false advertising.  Doc. 26 at 19.  Ordinarily, a corporation cannot conspire "with its directors if they are acting in the corporation's behalf. . . .  [But] when officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation."  *Rowland*, 757 P.2d at 110 (citations omitted).  In its complaint, Tresóna states that "the affairs of Anita Cracauer and [CALLC] are intermingled, and they do not distinguish between themselves in their dealings."  *Id.*, ¶ 48.  Thus, Tresóna has not alleged that Cracauer was acting independently and therefore cannot claim that Cracauer conspired with CALLC.

### C.   Conclusion.

The Court has found that it may exercise jurisdiction over CALLC and Cracauer for Tresóna's claims, but that Tresóna has failed to state a claim for piercing the corporate veil and conspiracy.  The motion to dismiss will be granted with respect to these claims.

## II.   David Legg's Motion to Dismiss.

### A.   Personal Jurisdiction.

Tresóna argues that the Court may exercise jurisdiction over Legg because either (1) Legg consented to an online user agreement that requires adjudication of disputes in

Phoenix, Arizona, or (2) Legg has sufficient minimum contacts with Arizona.  Doc. 31.

"[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."  *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).  A contract clause that designates a particular forum is presumptively valid.  *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991).  The party challenging a forum selection clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 17 (1972).

"[T]here are three reasons a forum selection clause may be unenforceable: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought."  *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citations and quotation marks omitted).  Federal law governs the effect and scope of a forum selection clause.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) (citing *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)).

According to documents and a declaration that Tresóna filed, when Legg created an account on Tresóna's website he clicked a box stating "I agree to the terms specified in the User Agreement."  Doc. 31 at 21, 24.  A hyperlink to the User Agreement was included on the page.  *Id.*  Paragraph fifteen of the User Agreement states: "Signor consents to the exclusive jurisdiction of and venue in mediation and in the courts located in Phoenix, Arizona for any suits . . . connected in any way . . . to the subject matter of this Agreement."  *Id.* at 21, 27.  These facts are sufficient to show that Legg consented to the jurisdiction of Arizona courts.  Courts regularly uphold forum selection clauses in online user agreements when the user is given notice of the agreement by clicking a box stating "I agree to the terms of the User Agreement," followed by a hyperlink.  *See Fteja*

1    *v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (collecting cases).

2         Relying on *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir.

3    2007), Legg argues that Tresóna has failed to make a "prima facie showing" that Legg

4    consented to the forum selection clause.  In *Holland*, the parties signed contracts stating

5    that disputes would be submitted to a court in France.  *Id.* at 455.  Relying on a single

6    affidavit, the plaintiff claimed that it had made a subsequent telephone order with

7    defendants and, following the telephone order, had sent an email containing terms and

8    conditions – one of which stated that disputes would be adjudicated in the State of

9    Washington.  *Id.*  The plaintiff also claimed that it had posted these terms and conditions

10   to its website.  *Id.* at 458.  The Ninth Circuit found that the plaintiff had failed to make a

11   prima facie case that defendants had consented to the clause: "[Plaintiff] offers not a

12   single purchase order or email with any [defendant], let alone a purchase order with

13   accompanying terms.  [Plaintiff's] bare assertions are just that . . . .  [its] forum selection

14   argument boils down to a claim that it emailed terms to someone at [defendant's

15   business]."  *Id.* at 455-56.

16        Legg argues that the documents Tresóna has submitted do not show that he

17   consented to the user agreement.  Legg notes that the online user agreement Tresóna filed

18   with the Court is dated 2014, a year after he would have signed the agreement, and that

19   his name does not appear on the agreement.  The Court finds *Holland* distinguishable.

20   Tresóna has submitted screenshots of its website and user agreement, as well as a

21   declaration, all of which show that Legg would have had to consent to jurisdiction in

22   Arizona.  *See* Doc. 31 at 20-28.  These facts are more substantial than the mere claim in

23   *Holland* that the plaintiff e-mailed terms and conditions.  Although the screenshots are

24   dated 2014, Legg has not produced evidence calling into doubt Tresóna's claim that Legg

25   signed the same agreement in 2013.

26        Tresóna has made "a prima facie showing of jurisdictional facts to withstand the

27   motion to dismiss."  *Mavrix Photo*, 647 F.3d at 1223.  Legg has not argued that the forum

28   selection clause was the product of fraud or overreaching, that he would be deprived of

1   his day in court were the clause enforced, or that the clause violates public policy.  *See*

2   Doc. 32 at 6-8.  The Court therefore denies Legg's motion to dismiss for lack of personal

3   jurisdiction.

4       **B.      Failure to State a Claim.**

5       Legg moves to dismiss Tresóna's claims for breach of contract and conspiracy.

6   Doc. 23.

7           **1.      Breach of Contract.**

8               **a.      Copyright Preemption.**

9       Legg purchased from Tresóna the right to arrange the song Black Sheep for the

10  music organization "Nitro Show Choir."  Doc. 1-1 at 15.  In return, Legg agreed to grant

11  all rights in his arrangement of Black Sheep to the original copyright owner of the song if

12  his arrangement did not qualify as a work for hire.  *Id.*  The written agreement between

13  Legg and Tresóna also stated:

14      It is specifically understood and agreed . . . neither the [Legg] nor [Nitro
        Show Choir] has any right to sell, resell, reproduce, disseminate, lease, rent
15      and/or use the Arrangement in any manner whatsoever beyond the scope of
        the grant of rights hereunder.
16

17  Doc. 1-1 at 15.

18      Tresóna claims that Legg breached this agreement by allowing CALLC and

19  Cracauer to use and sell the arrangement.  The Court finds these allegations sufficient to

20  state a claim for breach of contract.  A plaintiff must allege existence of a contract

21  between the plaintiff and the defendant, a breach of the contract by the defendant, and

22  resulting damage to the plaintiff, and Tresóna has done so.  *See Coleman v. Watts*, 87 F.

23  Supp. 2d 944, 955 (D. Ariz. 1998).

24      Legg argues that Tresóna has improperly labeled as a breach of contract claim

25  what is in fact a copyright infringement claim, and that Tresóna lacks standing to bring a

26  copyright claim because Tresóna is not the copyright owner of Black Sheep.  Doc. 23 at

27  8-9 (citing *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377 (7th Cir. 2011)).

28  Tresóna responds that its claim is for breach of contract, no more, and that Legg's

arguments regarding copyright infringement and ownership are red herrings.

Legg fails to cite legal authority for his argument that the Court should treat Tresóna's breach of contract claim as a copyright infringement claim, and the Court cannot conclude from Legg's memoranda that the argument is correct. Although it is true that Tresóna is not the copyright owner of Black Sheep, Tresóna represents that it has the right to grant permission for arrangers to make limited-use arrangements of Black Sheep on behalf of the copyright owner (referred to in the contract as the "Arrangement Copyright Owner(s)"). Doc. 1-1 at 15. The contract between Tresóna and Legg states that Legg does not have the right "to sell, resell, reproduce, disseminate, lease, rent and/or use" his arrangement of Black Sheep beyond the permission granted in the contract, and the contract grants permission only to make an arrangement for the Nitro Show Choir. *Id*. Tresóna asserts breach of this contract provision, not infringement of copyright. As a party to the contract, Tresóna clearly has standing to enforce it. Legg cites no authority to suggest that an entity in Tresóna's position is somehow foreclosed from enforcing a contract to which it is a party.

To the extent Legg is suggesting that Tresóna's breach of contract claim is preempted by federal copyright law, he has failed to provide a clear or persuasive argument in their motions to dismiss. Under § 301 of the Copyright Act:

> (a) . . . [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to--

> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or . . .

> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106[.]

1   17 U.S.C. § 301.

2       The Ninth Circuit has explained that "[c]laims under state law are preempted
3   where: (1) the work at issue comes within the subject matter of copyright, and (2) the
4   state law rights are 'equivalent to any of the exclusive rights within the general scope of
5   copyright.'" *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004) (quoting
6   *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)); *see*
7   *also Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011). For the
8   second prong of this test, the Ninth Circuit has explained that "[t]o survive preemption,
9   the state cause of action must protect rights that are qualitatively different from the rights
10  protected by copyright: the complaint must allege an 'extra element' that changes the
11  nature of the action." *Grosso*, 383 F.3d at 968 (citation omitted).

12      If Legg's arrangement of Black Sheep falls within the subject matter of copyright,
13  the issue is whether Tresóna's breach of contract claim has alleged an "extra element"
14  that makes the claim different from a copyright infringement claim. Although courts
15  have found that breach of contract claims contain an extra element, *see, e.g.*, *ProCD, Inc.*
16  *v. Zeidenberg*, 86 F.3d 1447, 1454-55 (7th Cir. 1996), the parties in this case have failed
17  adequately to brief the issue. The Court accordingly will deny the motion to dismiss on
18  this ground. "All federal courts are in agreement that the burden is on the moving party
19  to prove that no legally cognizable claim for relief exists." 5B Charles A. Wright &
20  Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2005).

21                          **b.    Additional Arguments.**

22      Legg presents two additional arguments. First, Legg argues that "Tresóna's
23  contract does not – and cannot – limit Legg's ability to seek or obtain further permission
24  from the Copyright Owners. Tresóna likewise "does not allege that [CALLC] failed to
25  obtain permission from the Copyright Owners to publish Legg's arrangement of 'Black
26  Sheep.'" Doc. 23-1 at 9. Legg emphasizes that Tresóna is not the copyright owner of the
27  song, but rather a licensee.

28      This argument appears to be an affirmative defense. If the copyright owner of

Black Sheep permitted Legg to sell his arrangement of the song to CALLC, then Legg arguably would not have breached his contract with Tresóna.  While this defense may have merit at a later stage, at the motion to dismiss stage the sole question is whether the complaint has stated a plausible claim for breach of contract.  The complaint need not anticipate and plead around every possible affirmative defense.

Second, Legg argues that "Tresóna, through the contract, can prevent Legg from using or selling his arrangement only if Legg's arrangement qualifies as a work made for hire." Doc. 23-1 at 10.  Tresóna responds that, regardless of whether Legg's arrangement of Black Sheep qualifies as a work for hire, Legg agreed to grant to the original copyright owner of Black Sheep "all right, title and interest in" Legg's arrangement of that song. *See* Doc. 1-1 at 15.

The Court finds that Legg's work for hire argument is essentially the same as its copyright preemption argument, that is, Tresóna cannot bring a veiled copyright infringement claim because Tresóna is not the copyright owner of Black Sheep and Legg's arrangement does not qualify as a work for hire made on behalf of Tresóna.  For the reasons stated above, the Court cannot rule on this argument at this stage of the case.

### 2.   Conspiracy.

As already noted, "[f]or a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages.'"   *Rowland*, 757 P.2d at 110.  To state a claim for conspiracy, a plaintiff must establish the existence of an underlying tort from which the purported conspiracy arises. *Id.*

Here, the possible underlying torts are interference with contract, interference with business expectancy, and false advertising.  The parties agree that Legg cannot be liable for conspiring to breach or interfere with his contract with Tresóna.  *See Campbell v. Westdahl*, 715 P.2d 288, 294 (Ariz. Ct. App. 1985).  The Court finds, however, that Legg could be liable for conspiring with CALLC to commit intentional interference with business expectancy.

As discussed, the basis of Tresóna's interference with business expectancy claim is that (1) CALLC induced Legg to breach its contract with Tresóna and sell his arrangement of Black Sheep through CALLC, and (2) Tresóna lost the opportunity to sell to thousands of show choirs as a result of CALLC's improper actions.  Furthermore, Legg plausibly "agreed to accomplish" these ends when he gave CALLC the arrangement of Black Sheep "in return for an amount equal to fifty percent . . . of the purchase price for each sale made."  Doc. 1-1, ¶ 64.

Legg argues that he cannot be liable for conspiracy because Tresóna has not listed him as a defendant for any of its tort claims.  *See* Doc. 23-1 at 13.  But Legg fails to cite a rule that requires Tresóna to name Legg as a defendant for the tort that Legg allegedly conspired to commit.  If Tresóna can successfully show that Legg agreed with CALLC to accomplish interference with business expectancy, Legg may be liable for conspiracy.  Because Legg's motion argued that Tresóna had failed to state a claim for conspiracy with respect to any of the alleged torts, the Court need not address whether Legg could be liable for conspiring with CALLC to commit false advertising.

**III.     Plaintiff's Request for Entry of Default.**

Tresóna seeks entry of default against Defendant Legg, which presumably would lead to a motion for a default judgment.  Because Legg has appeared in this case and filed a motion to dismiss, default judgment would not be appropriate under the relevant Ninth Circuit test.  *See Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).  The Court therefore denies Tresóna's request.

**IT IS ORDERED:**

1.     Defendants Custom Arrangements and Anita Cracauer's motion to dismiss (Doc. 10) is **granted in part** as set forth above.

2.     Plaintiff's request for entry of default (Doc. 17) is **denied.**

3.     Defendant David Legg's motion to dismiss (Doc. 23) is **denied.**

4.     Plaintiff's motion for ruling (Doc. 24) is **denied as moot**.

5.     The claims against David Cracauer are dismissed without prejudice.

Doc. 26 at 1.

6.    The Court will schedule a case management conference by separate order.

Dated this 4th day of February, 2015.

_____
David G. Campbell
United States District Judge